**In the matter of William ANDREWS, Petitioner.**
**No. 67–8–ORL–CIV.**

United States District Court
M. D. Florida,
Orlando Division.
March 24, 1967.

Johnie A. McLeod, Apopka, Fla., for petitioner.

## ORDER

GEORGE C. YOUNG, District Judge.

This cause came on before the Court for hearing February 9, 1967, on the petition of William Andrews for a license to wreck off the Florida coast. The petitioner contends that jurisdiction is conferred upon this Court by Section 724, Title 46, United States Code. Section 724 provides:

"No vessel, or master thereof, shall be regularly employed in the business of wrecking on the coast of Florida without the license of the judge of the district court for the district of Florida; and, before licensing any vessel or master, the judge shall be satis-fied that the vessel is seaworthy, and properly and sufficiently fitted and equipped for the business of saving property shipwrecked and in distress; and that the master thereof is trustworthy, and innocent of any fraud or misconduct in relation to any property shipwrecked or saved on the coast."

The petitioner testified, and the only evidence is that the purpose of the petitioner is to recover and preserve relics and artifacts from sunken vessels located on the ocean floor off the coast of Florida.

Testimony was also adduced touching on the qualifications of the petitioner and the suitability of the vessel he intends to use. No question has been raised as to the trustworthiness and integrity of the petitioner; however, without passing on that question or upon the question of the suitability of the vessel, it is necessary, as a prelude, to determine whether the purpose of the petitioner is the same purpose as that contemplated by the statute.

Section 724, dates back to the Act of February 23, 1847, "An Act to establish a Court at Key West, in the State of Florida, and for other purposes." The Act was approved as Public Law No. 14, 29th Congress. The Act as it appears today differs from the Act as originally passed only in that all district courts within the state of Florida have been vested with the same jurisdiction as that originally given only to the Court at Key West.

Specifically, the question before this Court is whether the Act contemplates a grant of jurisdiction to the federal district courts sitting within the State of Florida for the purpose of licensing vessels to be used in pursuit of recovering relics and artifacts long laid to rest on the ocean floor, or whether the Act is directed to a different purpose.

An intensive, if not exhaustive search, has revealed no reported cases previously construing the applicability of the Act. This appears to be a case of first impression. The wording of the statute itself and its legislative history, however,

cast some light on what the Congress must have intended.

The bill which was enacted as Public Law No. 14 was introduced on February 6, 1847. The notation in the Congressional Globe with respect thereto is as follows:

Mr. Yulee (on leave) introduced a bill to establish a court at Key West, in the State of Florida; which was read twice, and referred to the Committee on the Judiciary. (The Congressional Globe (Dec. 7, 1846—Mar. 3, 1847; Feb. 6, 1847, p. 334.)

On February 12, 1847, the bill was reported in the Senate. There was no indication that, in reporting the bill, the committee on the Judiciary to which the bill was referred, submitted a report. An excerpt from the Congressional Globe for that date follows:

Mr. A [Ashley] from the Committee on the Judiciary, reported the bill to establish a court at Key West, in the State of Florida, and for other purposes, with amendments.

Mr. Yulee moved to postpone the previous order, for the purpose of considering the bill at this time.

The motion having been agreed to, the bill was taken up for consideration, as in committee of the whole; and the amendments having been agreed to, the bill was reported to the Senate. The amendments were then concurred in; and the question being an ordering the bill to be engrossed for a third reading.

Mr. Westcott stated that this was the bill which had come from the House of Representatives. There was a provision in it, introduced by the Committee on the Judiciary, which he thought it was his duty to move to strike out. It had been introduced contrary to his wish, but the committee had overruled his objection. He had doubts whether Congress had the power to vest in the judge of the court the authority given in relation to wrecks. The regulation, he was satisfied, would be beneficial to the State;

and the section was copied from an act which was right while Florida was a Territory, and had only delegates on this floor of this House. It gave a ministerial power to a judicial officer; and we might as well give a judge in Arkansas to grant licenses to trade with the Indian tribes, or any other power to carry measures designed by Congress to be vested in ministerial agents.

He moved to strike out the third section of the bill.

Mr. Ashley hoped the section would not be stricken out. The provision in that section was deemed to be within the powers of Congress, and especially applicable to Florida. He hoped no constitutional objection would be raised against it, and if not, that it would be permitted to remain in the bill. *The class of persons on whom it was intended to operate required, as much as any body of men, a controlling power over them.* In this district of Florida they have more property at their disposal than in any other part of the State. This controlling power had been exercised beneficially heretofore. No one was licensed without previous inquiry, and without satisfactory testimonials of their honesty, their qualifications, and their general good character. *The law had been tested, and the business of the wreckers had been regulated and carried on with more propriety and satisfaction than before.*

After a remark from Mr. Yulee, the purport of which was inaudible, the question was taken, and the motion to amend was decided in the negative.

The bill was then ordered to be engrossed, and was then read a third time and passed. (Id., Feb. 12, 1847, p. 391, emphasis added.)

■■ In the opinion of this Court the Act in question was enacted for the specific purpose of regulating persons in the business of saving vessels, cargo, and persons presently in danger. This construction is supported by the language of the Act; its provisions specifically require a finding by the judge that the

vessel to be used is not only seaworthy but also "properly and sufficiently fitted and equipped for the business of saving property shipwrecked and in distress." The business of searching for and recovery from the bottom of the sea, treasure and artifacts lost centuries ago is not the business of saving property shipwrecked and in distress and is, therefore, not the business contemplated by the Act requiring a license.

Furthermore, there was no evidence that the vessel to be used by the petitioner in this case was properly and sufficiently fitted and equipped for the business of saving property shipwrecked and in distress, so this Court could not be satisfied on that point even if the business of the petitioner is within the contemplation of the Act; it is, therefore, upon consideration

Ordered and adjudged that the petition of William Andrews for a license be and is hereby denied and the petition dismissed.